COPY

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| **GERMAN MEJIA** | * |
| **CONCEPCION RAMOS** | * |
| | * |
| Plaintiffs | * |
| | * |
| v. | *    Case No.: |
| | * |
| **SUNTRUST MORTGAGE, INC.** | * |
| Serve On: | * |
| | * |
| CSC-Lawyers Incorporating | * |
| Service Company, Resident Agent | *    **REQUEST FOR JURY TRIAL** |
| 7 Saint Paul Street, Suite 1660 | * |
| Baltimore, Maryland 21202 | * |
| | * |
| | * |
| | * |
| **FEDERAL NATIONAL MORTGAGE** | * |
| **ASSOC.** | * |
| SERVE ON: | * |
| STATE DEPARTMENT OF | * |
| ASSESSMENTS AND | * |
| TAXATION | * |
| Attention: Service On Foreign | * |
| Corporations | * |
| 301 W Preston St. | * |
| Baltimore, MD 21201 | * |
| | * |
| Defendants | * |

*************************************************************************

### COMPLAINT

### &

### REQUEST FOR JURY TRIAL

Plaintiffs German Mejia and Concepcion Ramos, through their undersigned counsel file this

Complaint and Request for Jury Demand and say in support:

# INTROUCTION

1. The underlying matter involves a matter quickly becoming common practice for mortgage servicers and secured parties. Typically, as in the matter at dispute in this action (with the Plaintiffs as homeowners and Defendant SunTrust Mortgage Inc. ("SunTrust") as the mortgage servicer and Defendant Federal National Mortgage Association ("Fannie Mae") as the secured party), the steps involve the following:

   (i) distressed homeowners seek to change and/or modify current credit arrangements with secured parties without seeking additional funds;

   (ii) these homeowners comply with all requests of the mortgage servicer and submit multiple applications for a modification and provide all requested documentation by the servicer on behalf of the secured party;

   (iii) the homeowners then give adequate consideration and agree to the change in credit terms offered by the servicer on behalf of the secured party related to a permanent Loan Modification Agreement ("LMA");

   (iv) the servicer agrees to the permanent LMA and accepts payments according the terms of the permanent LMA on behalf of the secured party;

   (v) but following the offer of a permanent modification, the homeowner accepting the offer and paying consideration, and after the Servicer applies the payments against the homeowner's new unpaid principal according to the new LMA, the servicer unilaterally rescinds the LMA for a number of bogus reasons, such as the case here, including the false statement that there was "no agreement with investor" or other reasons such as the document was not signed or notarized correctly;

(vi) homeowners never receive a written denial of credit of their loan modification applications;

(vii) the servicer subsequently demands payment from homeowners that they have no right to collect and add insult to injury by threatening to illegally foreclose on homeowners home and property;

(viii) servicers demand mortgage payments and newly accumulated interest under the terms of the original Note for the period of time homeowners complied with the valid enforceable terms of the LMA; and

(ix) the servicer leave homeowners with no other alternative but to commence litigation against the Servicer for its unfair and deceptive practices in violation of federal and state law.

2. These claims herein concern the utter failure of Defendant SunTrust Mortgage, Inc. ("SunTrust") to comply with its legal requirements regarding the processing of the Plaintiffs permanent LMA and the breach of an enforceable, valid LMA between SunTrust and the Plaintiffs, Mr. Mejia and Mrs. Ramos. The Plaintiffs negotiated in good faith with SunTrust Mortgage, Inc, and made timely monthly payments according to the negotiated and agreed upon LMA, only to have SunTrust Mortgage, Inc. unilaterally breach the LMA for bogus reasons and now threaten a wrongful foreclosure –otherwise known as an adverse action-on Mr. Mejia and Mrs. Ramos and their home and property.

3. If SunTrust, by and through their authorized agents, proceed to a foreclosure sale of Plaintiffs home and property, commonly known as 9203 New Hampshire Avenue, Unit B5, Silver Spring, MD 20903 (the "Property"), Plaintiffs will sustain significantly more damages and losses solely as the direct and proximate result of SunTrust's illegal actions. These damages

3

and losses will include the further loss of equity of their home, short- and long-term damage to their credit and credit history, emotional damages with physical manifestations as a result of both the threatened foreclosure proceedings and SunTrust's bogus denial of the LMA and related actions (both directly and indirectly through their authorized agents and affiliates), and an inability to secure alternative affordable, safe housing for their family

4. Finally, many of the illegal, unfair, and deceptive acts complained of in this complaint were identified by SunTrust in April 2011 in a settlement with Board of Governors of the Federal Reserve System ("Federal Reserve Board"). However, even though by that agreement it was aware and has knowledge that its practices are wrong, it has knowingly continued the same practices to which it promised the Federal Reserve it would not perform any more.

## PARTIES

5. Plaintiffs German Mejia and Concepcion Ramos are residents of the State of Maryland and the owners of real property commonly known as 9203 New Hampshire Ave, Unit B5, Silver Spring, Maryland ("the Property").

6. Defendant SunTrust Mortgage, Inc. ("SunTrust") is a foreign corporation from the State of Virginia with corporate offices located at 901 Semmes Avenue, Richmond, Virginia 23224.

7. Defendant Federal National Mortgage Association ("Fannie Mae") is the secured party of the Plaintiffs' loan subject to this action. See attached Notice of Intent sent to Plaintiffs on August 1, 2011 as Exhibit 1. Fannie Mae is also the principal to its agent SunTrust which is the authorized servicer of Plaintiffs' loan on Fannie Mae's behalf.

## JURISDICTION & VENUE

8. This Court has jurisdiction asserted because Defendants transact business and perform work and provide services in Maryland.

9. Venue is appropriate in this district because the Defendants conduct business within Baltimore City, Maryland directly and indirectly—including using this Court as part of their debt collection practices. Both Defendants also have real property interests in the City of Baltimore.

## FACTS

### A. THE FORECLOSURE CRISIS

10. Over the last few years, Maryland, and the entire Nation has been in a foreclosure crisis. Reports show that the worse of the crisis may be behind us, and, if indeed the worst of the crisis is behind us, the effects will be severe and long-lasting.

11. Increased foreclosures have a detrimental effect not only on homeowners who lose unique property and face homelessness, and suffer long-lasting damage to their credit, but also on homes surrounding a foreclosure, and, perhaps, neighborhoods that suffer decreased property values and municipalities that lose tax revenue.

12. Many mortgage servicers have offered permanent loan modification agreements to homeowners who were suffering from economic hardship due to the present economic conditions.

13. These permanent loan modification agreements modify credit terms of the original mortgage Note, but do not provide homeowners any additional credit. The permanent loan

modification typically does not, as in this matter, involve a refinance, renewal of credit, consolidation, or any waiver to collect after maturity.

14. The loan modification agreements are enforceable contracts that contain different terms than the original Note and require both a detriment to mortgagor and a benefit to the mortgagee.

15. For example, in consideration for servicers and lenders to forebear any arrears and past due payments and interests and fees, homeowners often agree to let the servicer/lender capitalize past due amounts and tack it on to the back of the loan. The servicer and lender can then tack on interest on top of interest. In exchange for lowering the monthly principal and interest payments to a more affordable, sustainable monthly payment, the homeowner agrees to extend the term of the loan and may even agree to make a balloon payment on unpaid principal amounts at the Maturity Date.

16. These negotiations require homeowners to complete and submit a modification application that seeks to adjust their monthly mortgage payment.

17. To apply for a modification, homeowners must submit a hardship letter, W-2 statements, pay stubs, State and Federal Individual Income Tax Returns, complete a Request for Modification and Affidavit (RMA), and submit Form 4506T-EZ.

## B. ENFORCEMENT ACTIONS BY THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM

18. In the fourth quarter of 2010, in response to widespread allegations of deficiencies and unsafe or unsound practices in residential servicing, several agencies, including the Federal Reserve System, the Office of the Comptroller of the Currency ("OCC"), the Federal Deposit Insurance Corporation ("FDIC"), and the Office of Thrift Supervision ("OTS") conducted on-site reviews of foreclosure processing at 14 federally regulated mortgage servicers, including SunTrust. *See* Interagency Review of Foreclosure Policies and Practices (April

2011), at 1, *available at*: http://www.occ.treas.gov/news-issuances/news-releases/2011/nr-occ-2011-47a.pdf.

19. On April 13, 2011, as a result of those reviews, the Federal Reserve Board announced formal enforcement actions "requiring 10 banking organizations to address a pattern of misconduct and negligence related to deficient practices in residential mortgage loan servicing and foreclosure processing." SunTrust was one of those banks. The press release states that "deficiencies represent significant and pervasive compliance failures and unsafe and unsound practices at these institutions." *See*, Press Release, Federal Reserve Press Release (Apr. 13, 2011) *available at*:

http://www.federalreserve.gov/newsevents/press/enforcement/20110413a.htm.

20. In resolution of the Federal Reserve Board enforcement action against it, SunTrust entered into a Consent Order to Cease and Desist with the Board of Governors of the Federal Reserve System on April 13, 2011. *See* Consent Order *available at*:

http.//www.federalreserve.gov/newsevents/press/enforcement/enf20110413a8.pdf.

21. SunTrust is the eighth largest servicer of residential mortgages in the United States. SunTrust services a portfolio of more than 950,000 residential mortgage loans. Between January 1, 2009 and December 31, 2010, SunTrust initiated 41, 543 foreclosures. Pursuant to the Consent Order SunTrust agreed to cease and desist and take affirmative action to remedy the deficiencies and unsafe and unsound practices identified by the Federal Reserve Board. Furthermore, SunTrust consented compliance with each and every applicable provision of the Consent Order. *See* Consent Order at 2 - 5.

22. In the Consent Order, SunTrust agreed to take the following affirmative actions:

[Within 60 days of this Order] submit to the Reserve Bank an acceptable written plan to enhance its enterprise-wide compliance program ("ECP") with respect to its oversight of

residential mortgage loan servicing, Loan Mitigation, and foreclosure activities and operations

...

[Submit to an independent Foreclosure Review to determine] whether a foreclosure sale occurred when the borrower had requested a loan modification or other loss mitigation and the request was under consideration; when the loan was performing in accordance with a trial or permanent loan modification;...

...

[Within 60 days of this Order] ..SunTrust shall submit to the Reserve Bank an acceptable plan and timeline for review and remediation, as necessary of SunTrust's management information systems for their residential mortgage loan servicing, Loss Mitigation, and foreclosure activities to ensure timely delivery of complete and accurate information to permit effective decision-making.

...

[Within 60 days of this Order]...SunTrust ...shall submit to the Reserve Bank an acceptable plan, along with a timeline for actions to be taken, for strengthening coordination of communications between SunTrust and borrows, both oral and written, related to Loss Mitigation and foreclosure activities to ensure: (i) that communications are timely and effective, and are designed to avoid confusion to borrowers; (ii) continuity in the handling of borrower's loan files during the Loss Mitigation and foreclosure processed by personnel knowledgeable about the borrower's situation; and (iii) that decisions concerning Loss Mitigation options or programs continue to be made in a timely fashion.

Consent Order at 10, 14, 19 and 24.

23. As a result of reduction in income and family illness, German Mejia and Concepcion Ramos, like so many other American residents, began experiencing difficulties managing their obligations in the later part of 2009.

24. On or around May 10, 2010, SunTrust offered Plaintiffs' a Loan Modification Agreement (loan # ******7960) (See attached "LMA" as Exhibit 2 "LMA"), the Plaintiffs agreed to, and in consideration, the Plaintiffs' agreed to change the term of the original mortgage note from 30 years to 40 years and further agreed that past due mortgage payments, fees and interest would be capitalized and added to the principal. The LMA from SunTrust purported to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt dated

February 28, 2006. The terms of the LMA required that as of June 1, 2010 the amount

payable would be $166, 607.22.

25. The LMA is fair, just, and reasonable.  This conclusion is based upon the following facts:

    (i) the modification would ensure that the purported secured party and homeowner alike

would obtain a benefit without the negative consequences of another foreclosure (i.e. losses

for the lender since the Property is upside down and loss of a home for the Plaintiffs and their

family);

    (ii) the modification would ensure that Fannie Mae would receive profit (i.e. interest) on

a loan that it would not otherwise receive it proceeded to foreclosure; and

    (iii) the modified payment, without an extension of credit, would be affordable for the

Plaintiffs for the short- and long-term.

26. On May 28, 2010, the Plaintiffs in good faith accepted SunTrust's offer by agreeing to the

terms and reviewing, executing, notarizing and returning Exhibit 2, the LMA, as required and

requested by SunTrust. Plaintiffs also began making payments according to the terms of the

agreement in June 2010.

27. Upon receipt of the executed, notarized permanent LMA (Exhibit 2), SunTrust agreed to

complete system changes to show that the Plaintiff's mortgage loan was current and began

accepting Plaintiff's payments and applying them to the unpaid principle in June 2010.

28. Beginning in June 2010 and continuing through April 2011, the Plaintiffs, in good faith,

made all the payments according to the terms of the LMA. SunTrust accepted and applied

Plaintiff's payments to the Unpaid Principal Balance. (See Exhibit 3, a payment sampling of

the monthly mortgage payments under the LMA).

29. Even though SunTrust knows the Plaintiffs speak limited English and read even less,
SunTrust has failed to have Spanish-speaking representatives contact Plaintiffs.  In one
instance in March 2011, SunTrust instead impermissibly spoke to Plaintiff's underage
daughter (who does speak English very well and is not a borrower). Plaintiffs' underage
daughter was given false information, which she relied on and relayed to the Plaintiffs' and
became fearful that she and her family were about to lose their home—had SunTrust not
conveyed this confidential information the Plaintiffs' daughter would not have known about
this situation since the Plaintiffs affirmatively chose not to involve their children in this
situation.  Plaintiffs' underage daughter also suffered stress and anxiety as a result of
SunTrust's false representations.

30. On or around April 4, 2011, SunTrust sent Plaintiffs a letter thanking Plaintiffs' for
proactively contacting them about a mortgage modification.  Even though Plaintiffs' at the
time were under a valid, enforceable LMA, the letter deceptively and unfairly purports to
attach the forms necessary to complete another modification application.

31. On or around April 14, 2011 SunTrust sent another bogus denial letter thanking Plaintiff's for
applying for a loan modification, but that after (a one year) review, during which the
Plaintiffs had accepted, performed, and relied upon the LMA as a binding modification,
SunTrust would not approve the modification based on "no agreement with investor".  This
statement by SunTrust was false.

32. On or around April 22, 2011, Plaintiffs sought the help of a Maryland approved housing
counseling agency, the Latino Economic Development Center ("LEDC"). LEDC faxed
Plaintiffs' response to the latest completed modification application requested by SunTrust.

However the Plaintiffs believed then and now that the LMA was a valid contract.  SunTrust never responded in writing to this request for a modification.

33. On or around May 6, 2011, SunTrust refused Plaintiffs' timely monthly mortgage payment under the LMA of $773.25. SunTrust's letter regarding this refusal failed to explain any reason (bogus or legitimate) why the monthly checks were refused.

34. SunTrust through its authorized representatives, Bierman, Geesing, and Ward, have attempted to collect a debt that is not owed. Exhibit 1. SunTrust through its authorized representative knowingly omit the fact that there is a valid, enforceable LMA as of May 28, 2010, and instead falsely allege that Plaintiff's are in breach of Deed in Trust and Note of February 28, 2006. Therefore the stated, unpaid principal is knowingly wrong, deceptive, and unfair.

35. On or around July 2011, after Plaintiffs' counsel made inquiries to SunTrust and Fannie Mae regarding the status of the LMA.  In response Plaintiffs' received from SunTrust a back-dated, proposed LMA, with slightly different terms than the original LMA (See attached as Exhibit 4). Plaintiffs' also received follow-up calls from SunTrust representatives requesting Plaintiffs' to sign the back-dated LMA.

36. Had Plaintiffs complied with SunTrust's requests to sign the back-dated agreement, Plaintiffs would have been at risk of being accused of mortgage fraud under Maryland law—a fact that neither SunTrust nor Fannie Mae ever explained to the Plaintiffs   Upon information and belief, the reason neither SunTrust nor Fannie Mae ever explained this to the Plaintiffs was because had the Plaintiffs actually had agreed to the backdated modification, SunTrust would have issued a bogus denial to Plaintiffs on the pretext that the agreement had not been timely returned by the Plaintiffs (when in fact Exhibit 2 had been timely returned to SunTrust).

11

37. Plaintiffs' Counsel contacted Fannie Mae beginning in July 2011 to verify if Fannie Mae was indeed the proper secured party of the Plaintiffs' loan and to determine if Fannie Mae had ever agreed with or considered the LMA. Counsel spoke to numerous representatives at Fannie Mae about the status of the LMA—none of who knew any information about the LMA. Finally, counsel faxed to Lloyd in the Fannie Mae Resource Center on August 1, 2011, copies of the LMA of May 2010 and subsequent letters, requesting the status of the LMA. Lloyd advised counsel that he will forward the LMA over to investigations and someone would get back in touch with counsel.

38. Plaintiffs' Counsel was advised by SunTrust representative Angel, ID# A2T, on August 5, 2011 that Rita Wyatt, the Fannie Mae Negotiator, attempted to contact Plaintiffs everyday from August 1, 2011 through August 4, 2011.  Angel explained that Ms. Wyatt was requesting Plaintiffs to sign and return the back-dated LMA along with yet another modification application package.

39. Plaintiffs' counsel also spoke to SunTrust supervisor Tyra on August 5, 2011 who advised that there was no guarantee that Plaintiff's new loan modification would be as favorable to plaintiffs as the previous LMA. Tyra however advised that this time the modification package would be sent, for the first time, in Spanish.

40. On or around July 11, 2011, SunTrust advised Plaintiffs, despite making, timely monthly mortgage payments according to the LMA, plaintiffs were now in default and Plaintiff's account was referred to authorized representatives to commence an illegal foreclosure

41. SunTrust representative Rachel (ID#R4P) reviewed the contact history and advised counsel on August 5, 2011, that in April 2011, ten (10) months after agreeing to the LMA, SunTrust

told Plaintiff's minor daughter that the LMA was no longer valid because page 3 of the LMA
was not properly signed and notarized-a fact which is untrue.

42. Also on August 5, 2011, Plaintiffs' counsel spoke with SunTrust representative Rachel, ID#
R4P who advised counsel that a SunTrust representative spoke with Plaintiffs' underage
daughter and advised the Plaintiff's minor daughter that the permanent LMA was not
properly notarized on page 3 and thus the LMA was no longer valid in March 2011. In
addition, Rachel advised counsel that Plaintiffs' minor daughter was told additional
documents were needed to apply for another modification.

43. On August 11, 2011, Plaintiff's counsel complied with Section 20 of the Deed of Trust and
served a Notice of Grievance on SunTrust.

44. In response to the Notice of Grievance, SunTrust sent a letter to counsel dated September 12,
2011, again attaching a back-dated dated LMA, but this time the LMA contained slightly
different terms then the LMA Plaintiff's previously signed and had notarized. SunTrust now
purports that the "slightly different" calculations were to satisfy the investor, however the
LMA still erroneously stated that the property is in Montgomery County, Maryland instead
of Prince Georges County, Maryland.

45. The September 12, 2011 letter also purports to explain a bogus reason, related to the
notarization on the LMA, for why SunTrust believes the LMA was not valid.   However,
SunTrust never explains why SunTrust representatives knowingly and falsely returned
Plaintiff's payments and advised counsel and Plaintiff's underage daughter that Plaintiffs
would have to file for a new modification instead of just having them sign a new LMA.

46. A review of page two of the original LMA reveals that both Mr. Mejia and Mrs. Ramos
signed and dated the LMA. Further, Notary Nolasco stated that both Mr. Mejia and Mrs.

Ramos appeared before her on the 28th day of May 2010. Notary Nolasco notarized both signatures as evidenced by her notary stamp under each signature. The LMA is not defective as to make it invalid or void. Even if the LMA was invalid, and Plaintiffs do not concede that it is, SunTrust agreed to the LMA by accepting and applying the Plaintiff's monthly payments to the unpaid balance for nearly 10 months.

47. SunTrust, in violation of the consent order it signed with the Board of Governors of the Federal Reserve System in April 2011, referred the case to a foreclosure attorney in August 2011 despite the fact that Plaintiffs had a valid, enforceable LMA in place since May 2010 (See attached Consent Order as exhibit 5).

48. SunTrust made additional consent order violations by failing to provide Plaintiffs with a final decision with a reasoned basis for denying the LMA. SunTrust blatantly violated the consent order by failing to reimburse and provide appropriate remediation to the Plaintiffs for impermissible, unreasonable penalties, fees and expenses, and for other financial injury, such as miscalculation of the default period, the amounts due, and compliance with notice periods. Counsel attempted by formal grievance letter on August 11, 2011 to seek resolution with SunTrust by sending a Notice of Grievance, per the terms of the Deed of Trust.

49. At all times relevant hereto, Plaintiff's were ready, willing and able to perform in good faith under the terms of the LMA. Notwithstanding Plaintiffs' payment of the monthly mortgage, SunTrust refused to accept payment and take action to satisfactorily perform under the LMA in May 2011. Since that time Plaintiffs have continued to retain the modified payments each month and are ready, willing, and able to tender those payments to SunTrust upon a Court order to enforce the LMA upon Fannie Mae and SunTrust. In further good faith to their

willingness, Plaintiffs have also paid their taxes on the Property and continued to maintain their homeowners insurance.

50. Plaintiffs have been damaged by Defendants' direct and indirect actions, including those by its authorized substitute trustees and attorneys, employees, agents, and sub-agents, described herein through the improper threat of an imminent foreclosure action against the Property and Plaintiffs have suffered damage to their credit, cost them legal fees and expenses attempting to resolve this dispute without the need for litigation, and caused emotional damages due to stress, anxiety, and other physical manifestations.   These damages and losses were reasonably foreseeable by the actions of SunTrust.

### COUNT I: BREACH OF CONTRACT/DETRIMENTAL RELIANCE
#### (Against Both SunTrust and Fannie Mae)

51. The LMA (Exhibit 1) is a binding contractual obligation upon SunTrust and Fannie Mae as demonstrated above, including but not limited to the allegations above.

52. The Plaintiffs paid consideration for the LMA.  The Defendants also received consideration pursuant to the terms of the LMA by turning an un-performing loan into a performing loan as well as avoiding a foreclosure in which the Defendants would realize significantly less than the value of the loan through the foreclosure and REO process would have allowed them to realize.

53. SunTrust has breached the LMA by failing to accept and apply Plaintiffs' on-time payments to the Unpaid Principal Balance, failing to properly and timely process their completed LMA, and by threatening foreclosure proceedings against the Plaintiffs and the Property.

54. Plaintiff's have no adequate remedy at law to (i) enforce the LMA offered by SunTrust on behalf of Fannie Mae to the Plaintiffs (ii) who accepted and performed their responsibilities

under the LMA and (iii) paid consideration to SunTrust (iv) who accepted such consideration

on behalf of Fannie Mae.

55. In reliance upon the terms of the Loan Modification Agreement, Plaintiff paid the monthly

mortgage according to the terms of the agreement   Plaintiffs began making timely monthly

mortgage payments in June 2010 and made timely on-time payments thereafter through May

2011 before SunTrust breeched the LMA contract.

56. After Plaintiffs made ten (10) payments pursuant to the terms of the LMA, SunTrust

wrongfully refused to accept payments from Plaintiffs. Injustice, in the form of foreclosure

proceedings, will result if the LMA (Exhibit 1) is not enforced.

57. As a result of SunTrust's refusal to accept payment under the terms of the LMA, Plaintiffs

purportedly, according to SunTrust's bogus correspondence, owe SunTrust approximately

$20,884.47 to avoid foreclosure proceedings, but in fact they owe nothing because the LMA

is a valid, enforceable contract against Fannie Mae and SunTrust.

58. SunTrust refused to accept payments according to the terms of the Loan Modification

Agreement. SunTrust instead falsely chose to advise Plaintiffs' minor daughter and counsel

that the LMA was not agreed to by the investor. This constituted a failure to disclose a

material fact, which it had a duty to disclose.

59. Plaintiff's relied on the belief that SunTrust had the authority to offer a Loan Modification

Agreement with Plaintiffs.

60. As a result of SunTrust's concealment, the Plaintiff's have suffered damages.

61. Fannie Mae is liable under this claim as the principal for SunTrust in this transaction since it

expressly authorized SunTrust to communicate with and service Plaintiffs' loan on its behalf.

WHEREFORE as a result of the above breach of contract violations, the Plaintiffs prey for

the Court to award and declare on their behalf against SunTrust and Fannie Mae:

    A.  Decree that the May 2010 LMA is legal and effective contract and order that the

         Defendants must perform their responsibilities under the LMA and further decree that

         SunTrust and Fannie Mae are in breach of the LMA.

    B.  Award the Plaintiffs those damages and losses which were reasonable foreseeable

         from SunTrust's breach.

    C.  Award the Plaintiffs nominal damages.

    D.  Such other relief as permitted under law or equity.


## COUNT II: EQUAL CREDIT OPPORTUNITY ACT, 15 U.S.C § 1691 *ET SEQ.*
## (Against SunTrust Only)

62. Plaintiffs reiterate and incorporate every allegation above as is set forth herein in full and

    add:

63. In the event that it is determined that the LMA (Exhibit 1) was not a binding contract,

    Plaintiffs bring this claim in the alternative to Count I.

64. Mr. Mejia and Ms Ramos are "applicants" governed by ECOA, 15 U.S.C.§ 1691a(b).

65. SunTrust is a "creditor" as governed and defined by ECOA, 15 U.S.C. § 1691(a)(e) at all

    times relevant hereto.

66. 15 U.S.C. § (d)(1) provides that "within thirty days…after receipt of a completed application

    for credit, a creditor shall notify applicant of its action on the application." 15 U.S.C. §

    1691(d)(1).

67. The accompanying Regulation B, issued by the Board of Governors of the Federal Reserve

    System pursuant to ECOA, further provides: "A creditor shall notify an applicant of action

taken within: (i) 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application." 12 C.F.R §202.9(a)(1)(i).

68. Additionally, 15 U.S.C. §1691(d)(2) requires "that each applicant against whom "adverse action" is taken shall be entitled to a statement of reason for such action from the creditor." 15 U.S.C §1691(d)(2).

69. 15 U.S.C. §1691(d)(6) defines "adverse action" as a denial or revocation of "credit", a change in terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or substantially the terms requested." 15 U.S.C. §1691(d)(6)

70. The term "credit" means the right granted by a creditor to a debtor to defer payment of a debt or to incur debts and defer its payment…and defer payment thereof. 15 U.S.C. § 1691a(d); 12 C.F.R. §202.2(j).

71. The Plaintiffs' LMA was wrongfully rescinded without SunTrust providing a bona fide reason for the refusal to accept Plaintiff's monthly payments  The LMA was an application for "credit" as defined by 15 U.S.C. § 1691a(d) and 12 C.F.R. § 202.2(j).

72. The Plaintiffs faxed SunTrust a second modification application, at SunTrust's request, on April 22, 2011 while current on their LMA but have never received a written response to that application for credit.

73. SunTrust ignored both the valid LMA and the modification application of April 22, 2011 and seeks to proceed to an illegal foreclosure action.

74. In failing to evaluate Plaintiff's modification application or issue a truthful written notice as to why SunTrust refused to accept Plaintiff's monthly payments according to the LMA, SunTrust effectively denied the Plaintiffs credit and thereby took "adverse action"- as defined by ECOA- on the Plaintiff's application. By threatening foreclosure of the Plaintiff's

home and property SunTrust also took an "adverse action" related to the Plaintiff's LMA and subsequent request for modification.

75. Plaintiffs never received a truthful written notice from SunTrust or anyone else of the adverse action taken on their LMA and application for loan application.

76. Additionally, SunTrust's written April 2011 notification to the Plaintiffs was not in compliance with the notification requirements set forth in ECOA, 15 U.S.C. § 1691(d)(2), as the notification failed to provide Plaintiffs with a specific statement of truthful reasons for the adverse action taken by SunTrust in refusing to accept Plaintiff's monthly payments.

77. The above failure of SunTrust to notify Plaintiff's of the adverse action taken on their applications within thirty days from receipt of their completed and accepted LMA as mandated by 15 U.S.C. §1691(d)(1), §1691(d)(2) and 12 C.F.R. §202.9(a)(1)(i) were substantive violations of ECOA.

78. As a result of the above ECOA violations, the Plaintiff's have suffered the following substantial actual damages:

  a. The loss of their rights to explain or quickly rectify and address any errors or problems in their application;

  b. Incurred legal fees and expenses;

  c. The loss of credit itself; and

  d. Frustration, anger, fear, and other emotional and mental anguish connected to the foreclosure on their home.

WHEREFORE as a result of the above ECOA violations, the Plaintiffs' prey for a judgment in their favor against SunTrust as follows:

  a. Actual damages pursuant to 15 U.S.C. §1691(e)(a) in a sum of no less than $100,000;

b. Punitive damages of $ 10,000 for each plaintiff per modification request pursuant to 15 U.S.C. §1691e(b);

c. An award of reasonable attorneys fees and costs pursuant to 15 U.S.C. §1691 (e)(d) and 12 C.F.R. § 202.16(b); and

d. Equitable relief entering an Order declaring that the Defendant's conduct is a violation of ECOA, insofar as it failed to provide notice to the Plaintiffs of it action on the valid LMA or on their application for credit within thirty days from receipt of their application for credit to modify their mortgage; and requiring the Defendant to deliver ECOA complaint notices in all future instances.

## COUNT III: VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT MD CODE, COMM. LAW, §14-201 *ET SEQ*

### (Against SunTrust and Fannie Mae)

79. The Plaintiffs reiterate and incorporate every allegation above as if set forth herein in full and add:

80. By threatening an intent to foreclose, SunTrust and Fannie Mae has acted as a collector as that term is defined by § 14-201(b) of MD. CODE, COMM. LAW.

81. Mr. Mejia and Ms. Ramos are persons as defined by § 14-201(d) of MD. CODE, COMM. LAW.

82. The underlying mortgage transaction and threat of foreclosure related to this complaint constitutes a "consumer transaction" as defined by § 14-201(c) of MD. CODE, COMM. LAW.

83. SunTrust has claimed, attempted, or threatened to enforce a right with knowledge that their right did not exist under Maryland or Federal law until they complied with ECOA, the Maryland Equal Credit Protection Act, and Md. Code Regs. 09.03.06.20.

84  Plaintiff's damages as alleged herein were proximately caused by SunTrust's actions including damages for emotional distress or mental anguish suffered with or without accompanying physical injury.

85. Fannie Mae is liable under this claim as the principal for SunTrust in this transaction since it expressly authorized SunTrust to communicate with and service Plaintiffs' loan on its behalf.

WHEREFORE, Plaintiffs pray for the following relief against SunTrust and Fannie Mae for their violations of the Maryland Consumer Debt Collection Act:

A.  A money judgment of all damages caused by SunTrust's actions, directly or indirectly, in the sum of $75,000 per Plaintiff;

B.  Their costs including attorneys' fees as well as pre- and post-judgment interest;

C  Such other and further relief as the nature of their cause may require.

### COUNT 1V: VIOLATION OF MARYLAND'S CONSUMER PROTECTION ACT, MD. CODE ANN. COM. LAW §13-101 *ET SEQ.*

### (Against SunTrust and Fannie Mae)

86. The Plaintiff's reiterate and incorporate every allegation above as if set forth herein in full and add:

87. The mortgage loan transactions and foreclosure practices as set forth herein of the Defendant against the Plaintiffs are governed by the Consumer Protection Act, MD. CODE ANN. COM. LAW § 13-101 *et. seq.*

88. Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The consideration of a loan modification and threat of a foreclosure action involves both the extension of credit and the collection of debts. Section

13-316 requires servicers like SunTrust to respond to inquiries from consumers within 15 days.

89. The Maryland Consumer Protection Act defines unfair or deceptive trade practices to include, inter alia, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.

90. By engaging in the acts and omissions set forth above, by making the misrepresentations set forth above, and by failing to disclose material facts where the failure to do so deceived or tended to deceive, the Defendant has committed unlawful or deceptive trade practices in violation of the Maryland Consumer Protection Act.  Sec. 13-301(1) and (3) and Sec. 13-303(4) ("MCPA").

91. The Defendant's' conduct, as set forth above, had the capacity, tendency or effect of deceiving the Plaintiffs who in fact were deceived or misled, causing injury and loss through the unfair or deceptive prosecution or threat of prosecution of a foreclosure action by Defendant.

92. Plaintiff's damages as alleged herein were proximately caused by SunTrust's actions including damages for emotional distress or mental anguish suffered with or without accompanying physical injury.

93. Fannie Mae is liable under this claim as the principal for SunTrust in this transaction since it expressly authorized SunTrust to communicate with and service Plaintiffs' loan on its behalf. WHEREFORE, Plaintiffs pray for the following relief against SunTrust and Fannie Mac for their violations of the Maryland Consumer Protection Act:

A. They be awarded as part of this claim a sum of no less than $75,000 per Plaintiff which represents their compensatory damages as a result of the Defendant's direct and indirect, unfair or deceptive practices as described herein including the Defendant's failure to comply with ECOA, the Maryland Equal Credit Protection Act, and Md. Code Regs. 09.03.06.20;

B. They be awarded their reasonable attorney's fees and costs; and

C. That their claim should include such other and further relief as the Court deems just and proper.

**COUNT V: VIOLATION OF THE MARYLAND MORTGAGE FRAUD ACT,**

**MD. CODE ANN., REAL PROP. § § 7-401, ET SEQ.**

**(Against SunTrust and Fannie Mae)**

94. Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

95. Fannie Mae, as the principal of SunTrust related to the Plaintiffs' mortgage transactions at issue in this complaint, is liable as a principal for the actions of SunTrust in this matter.

96. The Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. § 7-401, et. seq., governs the relationship between Defendants and the Plaintiffs.

97. Md. Code Ann., Real Prop. § 7-401(c) provides: "Homeowner" means a record owner of residential real property. The Plaintiffs are record owners of the residential property in question and are therefore Homeowners.

98. Md. Code Ann., Real Prop. § 7-401(e) provides: "Mortgage lending process... include [t]he... servicing... of a mortgage loan."

99. Md. Ann. Code, Fin. Inst. § 11-501(l) provides: "Mortgage loan" means any loan or other extension of credit that is: (i) secured, in whole or in part, by any interest in residential real property in Maryland, and (ii) for personal household or family purposes, in any amount.

100. The MMFPA works to protect the interests of all parties to mortgage transactions in Maryland from misstatements, misrepresentations and omissions. In this instance, the MMFPA works to protect borrowers like the Plaintiffs from mortgage companies like the Defendants and ensure a level, fair playing field between all borrowers and professionals.

101 The Plaintiffs are homeowners in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the servicing of their residential mortgage loans and the attempts to collect a non-existent "past-due" arrearage.

102. Md. Code Ann., Real Prop. § 7-401(d) provides:

"Mortgage fraud" means any action by a person made with the intent to defraud that involves:
1. Knowingly making any deliberate misstatement, misrepresentation or omission during the mortgage lending process with the intent that the misstatement, misrepresentation or omission be relied on by a mortgage lender, borrower or any other party to the mortgage lending process;
2. Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.
3. Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1) or (2) of this section;
4. Conspiring to violate any provisions of item (1), (2), or (3) of this section...

103. SunTrust has committed Mortgage Fraud by knowingly making, as described herein, deliberate misstatements, misrepresentations, and omissions during the mortgage lending process, with the intent that the misstatements, misrepresentations and omissions be relied on by the Plaintiffs in the following manner:

    a.  SunTrust knowingly sent Plaintiffs notices that Plaintiffs' mortgage was in default despite the fact that Plaintiffs have made all required payments under their LMA.

    b.  SunTrust knowingly made false statements to the Plaintiffs underage daughter, who is not the borrower, about the status of the loan.

104.    As a result of Defendant's knowingly deceptive and untrue communications, Plaintiffs have suffered economic and noneconomic damages, as described more fully above, and incurred court costs and attorney's fees.

WHEREFORE, Plaintiffs respectfully request the Court enter judgment in favor of Plaintiffs and against the Defendants for: actual damages of not less than $100,000; treble damages against the Defendants for their willful and knowing violations pursuant to Md. Code Ann., Real Prop. § 7-406(c), costs and attorney's fees incurred by Plaintiffs; and grant Plaintiffs such other and further relief as this court finds necessary and proper.

Respectfully Submitted,

Alexi C. Thomas
Law Office of Alexi C. Thomas, LLC
201 West Padonia Road, Suite 202
Timonium, MD 21093
Phone: 443 985-0618

Phillip Robinson, Of Counsel
Legg Law Firm, LLC.
5500 Buckeystown Pike
Frederick MD 21703
Phone: 301 620-1016
Fax:   301 620-1018

## JURY DEMAND

Plaintiffs request a jury trial on all legal claims and findings of fact.

_____

Alexi C. Thomas